IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANDREW CASTRO,**                               Case No. 1:17 CV 1231

    Plaintiff,                                   Judge Donald C. Nugent

    v.                                           Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                   REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Andrew Castro ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated June 13, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff received SSI as a child. *See* Tr. 25. After he turned 18, his eligibility for benefits was re-evaluated using the rules for determining disability in adults. *See id.* The state agency responsible for disability determinations found Plaintiff was no longer eligible for SSI as of June 30, 2014. (Tr. 63). This determination was upheld on reconsideration. (Tr. 64, 90-93, 102-06). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 107). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on

February 26, 2016. (Tr. 47-61). On April 11, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 25-36). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on June 13, 2017. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background

Plaintiff was born in August 1995, and was twenty years old at the time of the ALJ hearing. *See* Tr. 62, 206. Plaintiff asserts disability primarily due to migraines and ADHD. *See* Tr. 206. He received disability benefits as a child, but Plaintiff was determined to be no longer disabled as of June 30, 2014. *See* Tr. 25.

Relevant Evidence[1]

*Prior to Non-Disability Determination*

In 2010, an Evaluation Team Report from Lorain City Schools noted Plaintiff's difficulty focusing, attending to tasks, and inability to work well under pressure. (Tr. 164-65, 169).

In July 2013, Plaintiff was hospitalized for four days due to a migraine headache with mental status changes. (Tr. 258). The episode began with a headache accompanied by vomiting, followed by "combative and aggressive" behavior. *Id.* Plaintiff underwent a neurological evaluation while hospitalized, with the neurologist noting "[t]he mostly likely diagnosis is probably related to patient's explosive disorder occurring during a migraine, given the change in behavior, recent break up with girlfriend, recent runaway [sic] from home." (Tr. 283). Plaintiff

---

1. The undersigned summarizes the evidence relevant to Plaintiff's arguments, which focus on limitations as a result of his migraine headaches and ability to concentrate. *See, e.g., Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

reported headaches "once in a blue moon" and therefore the neurologist did not recommend a preventative medication. *Id.* The discharge notes state Plaintiff "was back to his normal baseline mental status" and "[h]e had completely negative neurological and psychiatric workup." (Tr. 259). He was instructed to follow up with his pediatrician in two to three days. *Id.*

Plaintiff saw pediatrician Samuel Getachew, M.D. on August 7, 2013 to follow up. (Tr. 318). His physical examination findings were normal, and Dr. Getachew assessed anxiety and depression. (Tr. 318). Dr. Getachew referred Plaintiff to a mental health provider. *Id.*

The following month, Plaintiff returned to Dr. Getachew complaining of a right-sided headache. (Tr. 317). It started after dental work and lasted four days. *Id.* Plaintiff's mother also reported "constant migraines". *Id.* Dr. Getachew assessed a headache and recommended ibuprofen. *Id.*

In November 2013, Plaintiff again went to the emergency room due to a headache with nausea and light sensitivity. (Tr. 293-96). Plaintiff reported the headache came on gradually and started one day prior. (Tr. 295). Plaintiff was diagnosed with a migraine and instructed to follow up with his pediatrician. (Tr. 294). At a follow-up appointment, Dr. Getachew again assessed a headache, and referred Plaintiff to a neurologist. (Tr. 316).

Later in November 2013, Plaintiff saw neurologist Sanjay Parikh, M.D., for migraines. (Tr. 348). He reported having headaches since age five, about two to four times per week. *Id.* He tried Butalbital and ibuprofen, which only worked sometimes. *Id.* Plaintiff's neurological and physical examinations were normal. (Tr. 351). Dr. Parikh diagnosed migraine headaches with intractable migraine, encephalopathy, and attention deficit disorder of childhood. *Id.* He prescribed Atenolol, Imitrex, and Vyvanse, and ordered an EEG. *Id.* The EEG was normal. (Tr. 347, 354).

Plaintiff returned to Dr. Parikh in February 2014 reporting his migraines had "been better", with Atenolol "helping". (Tr. 416). He only had "about 2 [migraines] since last visit." *Id.* He also noted the Vyvanse helping with his ADD symptoms. *Id.* Dr. Parikh noted Plaintiff was "in the 12th grade, doing well and is planning to go to college". *Id.* He continued Plaintiff's diagnoses and medications. (Tr. 416-18).

In May 2014, Plaintiff returned to Dr. Parikh, with his mother reporting he had more headaches. (Tr. 412). His mother also reported he could not function well the day after taking Imitrex, and that Vyvanse caused drowsiness. *Id.* Dr. Parikh noted that "[s]ince last seen, he has done very well on [A]tenolol and his headache frequency and severity has improved." *Id.* Due to the side effects of Vyvanse, Dr. Parikh switched Plaintiff to Strattera. *Id.*

During this time period, Plaintiff also saw therapist Kimberly Fuller, L.S.W., with whom he discussed issues regarding school, college preparation, and college aptitude testing. (Tr. 400-04). His mental status examinations were normal. *Id.*

*Subsequent to Non-Disability Determination*[2]

Plaintiff returned to Dr. Parikh in July 2014. (Tr. 408). Plaintiff's mother reported he had headaches once or twice weekly while at his summer job. *Id.* Dr. Parikh noted Plaintiff had "done well at [A]tenolol and Strattera and takes Imitrex with ibuprofen as needed for breakthrough headaches." *Id.* Plaintiff was "going to go to LCCC and then to Akron from there." *Id.* Dr. Parikh instructed Plaintiff to return in four months. (Tr. 411).

In September 2014, Plaintiff went to the emergency room for a migraine with nausea, sensitivity to light, and vision problems. (Tr. 442-44). He had taken Aleve and his migraine

---

2. Plaintiff was determined to be no longer disabled based on the adult rules as of June 30, 2014. (Tr. 27).

medication. (Tr. 444). He was given medications, and discharged in improved condition with instructions to continue his current medications. (Tr. 445). At a follow-up visit with Dr. Getachew, Plaintiff reported his emergency room visit, but primarily complained of asthma symptoms. (Tr. 451).

In December 2014, Plaintiff again saw Dr. Parikh. (Tr. 473). Dr. Parikh commented that Plaintiff "need[ed] to be restarted on medication", and Plaintiff had "two migraines per month". *Id.* "Imitrex control[led] his headaches" and "[f]ocus was controlled with Strattera." *Id.* Dr. Parikh found that "[s]ince last seen, [Plaintiff] ha[d] done well on his medication" and he could "tell a big difference when on the medicine compared to off the medication." *Id.* Plaintiff was "in his first year at LCCC and doing well". *Id.* Dr. Parikh continued Plaintiff's medications. *Id.*

Plaintiff returned to Dr. Parikh in June 2015 complaining of "more headaches" and "Imitrex 100 mg is ineffective." (Tr. 513). Dr. Parikh increased Plaintiff's daily Atenolol dosage, and instructed him to "use Imitrex 100 mg with two Aleve at the onset of the headache and repeat in two hours if the headaches continue." *Id.*

At a follow-up visit the following month, Dr. Parikh noted Plaintiff had been "doing alright since his last visit", having one to two migraines per month. (Tr. 517). Dr. Parikh also noted Plaintiff "[did] well on atenolol and his headache frequency and severity ha[d] improved." *Id.* He again noted Plaintiff could "tell a big difference when on the medicine compared to off the medication." *Id.*

In November 2015, Plaintiff saw Kathy Dalzell, C.N.P., at the Xcell Medical Group reporting migraines and pain in the cervical region. (Tr. 580). She noted prior treatment methods had failed. *Id.* Plaintiff underwent a sphenopalatine ganglion (SPG) nasal block for relief. *Id.* He also underwent chiropractic manipulation at this visit and Ms. Dalzell noted it was her "clinical

opinion that chiropractic treatment should continue", Plaintiff was "improving slowly" and "feeling somewhat better." (Tr. 580-81). Plaintiff returned nine more times in November for nasal blocks and chiropractic treatment. (Tr. 581-88). Treatment records show slow or slight improvement, and that Plaintiff was feeling "a little better" or "somewhat better." *See id.* In mid-November, the records indicated Plaintiff had "completed his 12 SPG treatments and has improved. His frequency, duration, and intensity has decreased." (Tr. 585); *see also* Tr. 586 ("[he] has completed the 12 SPG but headache persists"). The provider recommended "if headaches begin worsening he should come on a Monday for 5 consecutive days of SPG." *Id.* The final note in the record stated he was feeling "a little better" and his "response to treatment is little improved." (Tr. 588).

Plaintiff also returned to Dr. Parikh in November 2015. (Tr. 590). Plaintiff stated he was doing well since his last visit and his migraines "have been okay." *Id.* He reported "about 10 per month." *Id.* Dr. Parikh commented that "[s]ince last seen, he has done well and his headache frequency and severity is improved." *Id.* He continued Plaintiff's medications. (Tr. 590-92).

*Opinion Evidence*

*Treating Provider*

In a January 2014 medical source statement, Ms. Fuller indicated Plaintiff received treatment since August 2013 to address oppositional defiant disorder. (Tr. 360). She noted he improved his defiant behavior but continued to struggle with appropriate coping. *Id.* For Plaintiff's limitations, she noted he "appears to struggle with social skills, engaging in tasks that do not interest him, or cop[ing] effectively with challenging activities." (Tr. 361).

*Consultative Examiners*

In March 2014, Thomas Zeck, Ph.D., performed a psychological consultative assessment of Plaintiff at the request of the state agency. (Tr. 364-72). Plaintiff's mother reported diagnoses of ADHD, explosive disorder, learning disability, asthma, and migraines. (Tr. 364). Dr. Zeck reviewed prior intellectual assessments, noting that his scores placed him in the average range, but "[h]is achievement scores seem to show him to be lower than what one would expect with an individual with an Intelligence Quotient within the average range." (Tr. 365). Dr. Zeck assessed attention deficit hyperactivity disorder, predominantly inattentive presentation. (Tr. 370). He noted Plaintiff rubbed his forehead occasionally during both the interview and the testing, and complained of a migraine. (Tr. 366). For his functional assessment, Dr. Zeck opined Plaintiff would "[i]n general . . . have the capacity to function close to the average range" in understanding, remembering, and carrying out instructions. (Tr. 370). He noted Plaintiff "was not overly attentive and involved in [the] evaluation", but that based on school reports "he is able to maintain attention although it is a problem for him at times" and "[w]ith his medication he is more attentive and focused than he would be without his medication." *Id.* Dr. Zeck also opined Plaintiff had trouble in social situations and "may, because of his situation and his pain and discomfort, have some difficulty in getting along with supervisors and coworkers". (Tr. 372). This was because "[i]t is not sure exactly what kind of attitude he develops when he's having a migraine, but reportedly he does become quite frustrated, aggravated, and irritated." *Id.* Dr. Zeck thought Plaintiff "would have difficulty dealing with work pressure in the work setting." *Id.*

In August 2014, psychologist James Spindler, M.S., examined Plaintiff at the request of the state agency. (Tr. 421-26). Plaintiff reported a history of migraines, asthma, and ADHD starting at age five. (Tr. 422). Plaintiff reported migraines once or twice per week that could last anywhere

from four hours to a day-and-a-half. *Id.* Plaintiff held summer jobs in 2012 and 2014 "as a general laborer" and reported good performance ratings and getting along with co-workers. (Tr. 423). Plaintiff "said he did not know" what was preventing him from working "other than the fact that he is currently a full-time college student." *Id.* In his functional assessment, Dr. Spindler opined Plaintiff appeared to be of low-average intelligence and "seem[ed] capable of understanding and carrying out instructions in many job settings." (Tr. 426). "However he is likely to require more time to learn new material or skills than the average individual his age." *Id.* Regarding Plaintiff's abilities in attention and concentration, Dr. Spindler noted Plaintiff "did not appear to have any major difficulty staying focused" during the assessment, and that "[o]nce he learns a new skill or work routine he may come close to the performance speed of others, though at his peak performance he is likely to trail somewhat behind others." *Id.* Dr. Spindler also thought Plaintiff could respond appropriately to supervision, to coworkers, and to routine work pressures "once he learns how to do his assigned job." *Id.*

In September 2014, Hassan Assaf, M.D, conducted a physical consultative examination of Plaintiff. (Tr. 429-33). Plaintiff reported having headaches since he was six year old, and that he currently had headaches once per week, with occasional nausea and vomiting. (Tr. 429).[3] For his medical source statement, Dr. Assaf opined Plaintiff "should avoid exposure to dust and other industrial pollutants" and that Plaintiff had "mild limitations in activities requiring bending and lifting." (Tr. 432).

---

3. Dr. Assaf also assessed Plaintiff's back pain and asthma, which are not at issue in this appeal. *See* Tr. 429-33.

*Reviewing Physicians*

In February 2014, state agency physician Bradley Lewis, M.D., concluded Plaintiff had no severe physical impairments. (Tr. 362). Linda Hall, M.D., reached the same conclusion in September 2014. (Tr. 452).

In April 2014, state agency psychologist Leslie Rudy, Ph.D. reviewed Plaintiff's records and opined he would be moderately limited in understanding and remembering detailed instructions, moderately limited in certain areas of sustained concentration and persistence, moderately limited in areas of social interaction, and moderately limited in the ability to respond appropriately to changes in the work setting. (Tr. 381-82). She opined Plaintiff could "perform SRT's [simple, routine, tasks] in a low stress environment with minimal production demands and limited social demands." (Tr. 383).

In September 2014, state agency psychologist Karla Voyten, Ph.D., reviewed Plaintiff's records. (Tr. 463-70). She opined Plaintiff was moderately limited in maintaining social functioning, and in maintaining concentration, persistence, or pace. (Tr. 463). She opined Plaintiff had no significant limitations in understanding or memory; moderate limitation in the ability to maintain concentration and attention for extended periods; moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychological symptoms; moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors; and moderate limitation in the ability to respond appropriately to changes in the work setting. (Tr. 467-68). In conclusion, she explained:

> It is concluded claimant retains sufficient mental capacity to concentrate, understand, and remember routine, repetitive and 3-4 step uncomplicated instructions with adequate persistence and pace once he learns new materials or skills. He is able to handle brief and superficial coworker contact and ordinary levels of supervision found in a customary work setting. He can handle the stresses

of a routine, repetitive, or 3-4 step tasks. He would not be suitable for detailed or complex/technical instructions or tasks.

(Tr. 470).

Testimony and Function Reports

In a May 2014 disability report completed for the state agency, Plaintiff reported he could not function the day of, or day following, a migraine. (Tr. 225). He stated he missed school as a result. *Id.* In July, he reported difficulty concentrating, focusing, and understanding; he tended to forget things, and was taking pain killers more often because lights bothered him. (Tr. 233).

At the February 2016 hearing, Plaintiff testified he was attending Lorain County Community College studying electrical engineering. (Tr. 46). He stated he withdrew from several classes, was on academic probation due to low grades, and often missed classes. (Tr. 46-47). He explained this was due to migraines, and a car accident due to which he missed finals. (Tr. 47) ("Been in and out of the classes, migraines, and the whole nine yards. Second semester actually ended up getting better, but when it came to third, I ended up in a car accident and didn't help much. I missed finals and doctors' appointments."). Plaintiff had previously worked part-time for the Lorain City Schools doing maintenance, and was working part time (approximately nineteen hours per week) for Sam's Club at the time of the hearing. (Tr. 47-48).

Plaintiff testified he had approximately five migraines per month, but headaches more frequently. (Tr. 52). He could continue to function somewhat with a regular headache. (Tr. 53). Plaintiff testified his headache frequency improved from every day to "once or twice a week and then they'll escalate." (Tr. 54).

Plaintiff testified that when he had a headache, light, noise, and stress made it worse. (Tr. 48). Alleviating factors were darkness, quiet, and sleep. (Tr. 49). Plaintiff had experienced migraines at work, and he would "either hurry up and do the task or find some way to relax and

clear [his] head." (Tr. 49-50). He stated his job was aware of his headaches "[t]o an extent", in that he would "stop upstairs to take some Tylenol or Aleve, but other than that, no." (Tr. 50). "[E]very blue moon", they might give him a break, and would sometimes "change up [his] tasks". *Id.* He typically missed work four to five times per month due to a migraine. *Id.*

Plaintiff testified he was taking Atenolol, Vyvanse, Aleve, and Imitrex. (Tr. 51). He described the side effects as "[l]ight sleepiness, but that's more or less like exhaustion." *Id.* When asked about notes in the record indicating he had difficulty functioning the day after a migraine after taking Imitrex, Plaintiff explained: "It's pretty much the headache lasting on to the next day to a point where I can't really move out of bed where I'm dizzy, aggravated, just want to be left the heck alone." (Tr. 51-52). He had nasal blocks performed by a chiropractor, which he said sometimes helped. (Tr. 53).

VE Testimony

A VE also appeared and testified at the ALJ hearing. (Tr. 57-60). When asked to consider an individual limited in the way in which the ALJ found Plaintiff, the VE testified such an individual could perform jobs such as order picker, packager, and dietary aide. (Tr. 58-59). The VE also testified that if a person were to miss two or more workdays per month, or be off task at least twenty percent of the workday two or more days per month, such an individual could not sustain full time employment. (Tr. 59).

ALJ Decision

In his written decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant attained age 18 on August 26, 2013, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. The claimant was notified that he was found

no longer disabled as of June 30, 2014, based on a redetermination of disability under the rules for adults who file new applications.

2. Since June 30, 2014, the claimant has had the following severe impairments: migraine headaches, attention deficit hyperactivity disorder (ADHD); and asthma (20 CFR 416.920(c)).

3. Since June 30, 2014, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that since June 30, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid even moderate exposure to pulmonary irritants, direct sunlight, and no unprotected heights. He is limited to simple tasks with simple instructions. Only occasional interaction with supervisors and he must have scheduled breaks every two hours.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born August 27, 1995, and is a younger individual age 18-49 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Since June 30, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant's disability ended on June 30, 2014, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(Tr. 27-35).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

13

5.      Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence because the ALJ: 1) failed to explain his conclusions regarding whether any limitations were caused by Plaintiff's migraine headaches; 2) "cherry-picked" the record, focusing only on the evidence that supported his conclusion; 3) erred in his subjective symptom analysis; 4) failed to assess the side-effects of Plaintiff's medications; and 5) failed to incorporate limitations in concentration, persistence and pace into the RFC despite assigning "significant" and "great" weight to physicians who opined as to such limitations. The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective allegations and the assessment of Plaintiff's RFC is supported by substantial evidence. For the reasons discussed below, the undersigned recommends the ALJ's decision be affirmed.

Subjective Symptom Statements

Within his challenge to the ALJ's RFC determination, Plaintiff challenges the ALJ's evaluation of his subjective symptom reports. The undersigned addresses this argument first, and then turns to the overall RFC analysis.

A claimant's statements of symptoms alone are not sufficient to establish the existence of a physical or mental impairment or disability. 20 C.F.R. § 416.929(a); SSR 16-3p, 2017 WL 5180304.[4] When a claimant alleges impairment-related symptoms, a two-step process is used to evaluate those symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, *2-8.

First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, *e.g.*, pain. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms is necessary to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the

---

4. SSR 16-3p replaces SSR 96-7p and applies to ALJ decisions on or after March 28, 2016. *See* 2017 WL 5180304, at *1, 13. The ALJ's decision here is dated April 11, 2016 and thus SSR 16-3p applies. SSR 16-3p clarifies the language of the pre-existing standard in SSR 96-7p, 1996 WL 374186 (1996) to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will not 'assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'" *Huigens v. Soc. Sec. Admin.*, 718 F. App'x 841, 848 (11th Cir. 2017) (quoting *Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p)).

factors set forth in 20 C.F.R. § 416.929(c)(3). *Id.* at *7-8. Those factors include daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for relief of pain or other symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms, *e.g.*, lying flat on one's back; and any other factors pertaining to a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c). Although the ALJ must "consider" the listed factors, there is no requirement that he discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained, interpreting SSR 96-7p, the precursor ruling, that "an administrative law judge's credibility findings are virtually unchallengeable". *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal citation omitted). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

Here, the ALJ correctly identified the two-step process (Tr. 29), summarized Plaintiff's symptom self-reports and explained why he found them not entirely supported:

> In his function report, the claimant reported difficulty concentrating and needing things repeated. He also said that headaches slow him down. (Exhibit 12E/1). He reported using reminders like sticky notes and said he did not cook because he may forget something is on the stove. (Exhibit 12E/5). He is able to go to the store and pay bills. (Exhibit 12E/6). He also reports riding his bicycle, playing video games, taking electronics apart, drawing cartoons, and reading (Exhibit 12E/7).
>
> At the hearing, the claimant testified that, due to migraines, he suffered low grades in college and had to call off work several times. He stated that he had about 5 migraines a month, and is able to function with a regular headache. Despite frequent

requests by his neurologist, the claimant testified that he did not keep a food or headache diary.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the objective medical evidence and other relevant evidence considered herein.

(Tr. 30).

Later in his decision, he further elaborated:

In terms of the claimant's allegations, they are not found to be supported by the evidence. Despite his conditions the claimant has completed high school and a significant amount of college. He has endorsed a desire to work and testified that he currently works about 18 hours every two weeks doing maintenance for Sam's Club. Physically, the records show little evidence of back pain or any continuing issues other than migraines and primary care follow-ups for asthma.

* * *

In terms of his migraines, the claimant's written reports, testimony and statements to consultative examiners all present a very significant amount of frequency and severity. However, the only medical records from the doctor that treat [sic] migraines, are those of Dr. Parikh, and he repeatedly notes that the migraines are well controlled. The only times that did not appear to be the case were when the claimant did not take his medication. (Exhibits 4F; 13F; 21F; 23F; 27F). While the evidence is clear that the claimant suffers from migraine headaches, the objective evidence fails to support the claimant [sic] allegation that they are as severe and/or frequent as [he] maintains.

(Tr. 34).

First, the ALJ relied upon Plaintiff's ability to complete high school, attend college, and work part-time. (Tr. 34); *see also* Tr. 416 ( "in the 12th grade, doing well and is planning to go to college"); Tr. 473 ("in his first year at LCCC and doing well"). An ALJ may consider an individual's ability to maintain part-time employment in assessing subjective symptoms. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (while the ability to work part-time is not necessarily indicative of the ability to work full-time, the "ability to maintain part-

time employment [is] one factor relevant to the determination of whether [a claimant] [is] disabled."). Consideration of daily activities is also appropriate when evaluating subjective symptom statements. *See* 20 C.F.R. § 416.929(c) (listing "daily activities" as a factor); *see also* Tr. 29 (ALJ discussion of Plaintiff's other daily activities and finding he had "mild" restriction).

Second, Plaintiff objects to the ALJ's consideration of the fact that his brain CT and EEG in July 2013 were normal. (Doc. 12, at 11-12) (citing Tr. 30). However, consideration of a lack of objective evidence has been approved by the Sixth Circuit in the migraine context, *see Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (explaining that "subjective complaints of pain during the physician visits, or the eventual diagnosis of claimant's condition, [are not] credible enough to rise to the level of 'objective medical evidence' " and "the lack of objective evidence substantiating the alleged disabling headaches is what precludes the allowance of disability benefits"); *Frankowski v. Astrue*, 2012 WL 6153399, at *7 (N.D. Ohio) ("Plaintiff points to medical records related to his treatment for migraine headaches, as well as his own testimony regarding their severity and frequency. However, he does not identify any objective record evidence establishing the severity of his migraines, or their effect on his ability to work."), *report and recommendation adopted by* 2012 WL 6152998. Here, the ALJ found Plaintiff's migraines to be a severe impairment despite state agency physicians' findings that he had no severe physical impairments. *See* Tr. 362; 452. Moreover, this lack of objective evidence was just one of several factors the ALJ evaluated. Immediately after this discussion in opinion, the ALJ reviewed Plaintiff's initial visit with Dr. Parikh (in which he reported two to four headaches per week), and then noted improvement in severity and frequency at later appointments with Dr. Parikh. *See* Tr. 30-31.

Third, as to the frequency of Plaintiff's migraines (and thus their impact on his ability to work), the ALJ noted inconsistencies between Plaintiff's reports, and the medical record. *See* Tr. 30-31.While Plaintiff testified he had about five migraines per month (Tr. 52), Dr. Parikh, who treated Plaintiff's migraines repeatedly noted less frequent reports of migraines, *see* Tr. 416 (February 2014 – "about 2 [migraines since last visit [in November 2013]")*;* Tr. 473 (December 2014 – "two migraines per month"); Tr. 517 (July 2015 – "getting about 1-2 per month"). The ALJ acknowledged a record from November 2015 that stated Plaintiff reported "10 [migraines] per month", but found "this appears to be a typographical error, when read in context with the doctor's other statements in the record such as noting improvement in headache frequency and no changes in the medicine regime." (Tr. 31) (citing Tr. 590). The undersigned finds this is a reasonable interpretation of this particular record. Throughout, Dr. Parikh repeatedly noted Plaintiff was doing well on his medications and his headache frequency and severity had improved. *See* Tr. 408 (July 2014 – mother's report of once or twice weekly headaches, and Dr. Parikh's comment "he has done well on [A]tenolol and Strattera and takes Imitrex with ibuprofen as needed for breakthrough headaches"); Tr. 473 (December 2014 – "[s]ince last seen, [Plaintiff] has done well on his medication" and he could "tell a big difference when on the medicine as compared to off the medication"); Tr. 513 (June 2015 – increase in medication dosage due to breakthrough headaches); Tr. 517 (July 2015 – "[s]ince last seen, he has done well on [A]tenolol and his headache frequency and severity has improved" and "[h]e can tell a big difference when on the medicine compared to off the medication"); Tr. 590 (November 2015 – migraines "have been okay" and "[s]ince last seen, he has done well and his headache frequency and severity is improved.") An ALJ may properly discount an individual's subjective symptom statements when they are contradicted by other evidence in the record. *See* 20 C.F.R. § 416.929(c); *Walters*, 127 F.3d at 531 (ALJ may

discount a claimant's subjective statements where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence").

Fourth, Plaintiff contends the ALJ violated SSR 16-3p in not discussing Plaintiff's testimony regarding the side effects of Imitrex. (Doc. 12, at 15). The undersigned, however, finds no error in the ALJ's evaluation. Although side effects of medication is one of the factors to be considered in evaluating subjective symptoms statements, *see* 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *8, there is no requirement that it be specifically discussed. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (ALJ may consider all the evidence without discussing all the evidence). Plaintiff points to his hearing testimony:

Q:    Okay. And are you still taking Imitrex?

A:    Yes.

Q:    Okay. And do you have any side effects from these medications?

A:    Light sleepiness, but that's more or less like exhaustion.

Q:    Okay. And there's a couple of notes in the records about, you know, if you're having a bad migraine and even after taking your Imitrex you're unable to function the next day. Can you explain that?

A:    It's pretty much the headache lasting on to the next day to a point where I can't really move out of bed where I'm dizzy, aggravated, just want to be left the heck alone.

(Tr. 51-52). This testimony does not clearly state a side effect from Imitrex, but rather demonstrates Plaintiff's allegations that his migraines could last longer than a day. As noted above, the ALJ reasonable found Plaintiff's allegations regarding the frequency and severity of his migraines not fully supported by the record. Notably, Plaintiff's mother reported in May 2014 that Plaintiff could not function well the day after taking Imitrex (Tr. 412), but in a March 2015 function report, Plaintiff stated there were no side effects from Imitrex (Tr. 246). Given this inconsistent evidence

in the record, as well as the fact that Plaintiff's physician continued to prescribe Imitrex, the undersigned finds the ALJ did not err in failing to include a discussion of this particular alleged side effect. *See, e.g., Biermaker v. Comm'r of Soc. Sec.*, 2016 WL 7985329, at *8 (E.D. Mich.) ("The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record"), *report and recommendation adopted by* 2016 WL 5027593.

The Court's review is limited to determining whether an ALJ's reasons for discrediting Plaintiff's allegations are reasonable and supported by substantial evidence of record. *See Jones*, 336 F.3d at 476. Certainly, there are places in the record which support Plaintiff's allegations of more severe and more frequent migraine pain, but the question on review is not whether substantial evidence could support another conclusion but rather whether substantial evidence supports the ALJ's conclusion. *Id.* For the reasons discussed above, the undersigned concludes the ALJ did not err in his analysis of Plaintiff's subjective symptom statements and that analysis is supported by substantial evidence.

<u>RFC Determination</u>

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. The RFC determination is reserved for the ALJ. *Id.* § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician.").

*Migraine-Related Limitations*

Plaintiff contends the ALJ erred in finding his migraines to be a severe impairment, but "fail[ing] to sufficiently explain his conclusions regarding whether any limitations were caused by Plaintiff's migraine headaches, and, if so, how his RFC assessment accounted for those limitations." (Doc. 12, at 9). It is not, however, *per se* error to find an impairment severe and at the same time impose no limitations in the RFC. *See Griffith v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("it is not necessarily inconsistent to recognize migraine as a severe impairment and to articulate a RFC that does not contain any migraine-related limitations[.]") (citing *Howard v. Comm'r of Soc.*, 276 F.3d 235, 240 (6th Cir. 2002) for the proposition that the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from"); *see also Wright v. Comm'r of Soc. Sec.*, 2017 WL 4339670, at *2 (S.D. Ohio) ("Accordingly, the mere fact that the ALJ's RFC determination did not contain migraine-related limitations does not make the RFC inconsistent with the ALJ's finding at step two that Plaintiff's headaches amounted to a severe impairment."); *Morris v. Comm'r of Soc. Sec.*, 2017 WL 1159809, at *6 (W.D. Mich.) (rejecting contention of error that "if the ALJ found Plaintiff's migraines to be a severe impairment, then he was required to include limitations for that impairment in the RFC"); *Simpson v. Comm'r of Soc. Sec.*, 2014 WL 3845951, at *9 (S.D. Ohio) ("Thus, an individual can have a severe impairment, *i.e.*, one that more than minimally affects work ability, and still retain the RFC to do a wide variety of work. Put another way, the existence of a severe impairment says nothing as to its limiting effects.").

Plaintiff contends the ALJ violated SSR 96-8p. This social security ruling explains:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform

> sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). However, "contrary to Plaintiff's argument, while SSR 96-8p implicitly requires an ALJ to *consider* all work-related limitations and functions, it does not require an ALJ to explicitly *address* Plaintiff's limitations with regard to every work-related function—especially if Plaintiff is not limited with regard to a particular function[.]" *Jackson v. Comm'r of Soc. Sec.*, 2017 WL 4985644, at *6 (E.D. Mich.); *see also Adams v Comm'r of Soc. Sec.*, 2014 WL 3368692, at *11 (E.D. Tenn.) ("SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision."). Here, the ALJ specifically discussed, with detail, Plaintiff's subjective reports regarding his limitations, the treatment record, and the opinion evidence. *See* Tr. 29-34.

As noted above, the ALJ's analysis of Plaintiff's statements was supported by substantial evidence of record. The ALJ decision also states he considered the entire record before determining Plaintiff's RFC. (Tr. 29). The limitations Plaintiff asserts are necessary to his RFC are supported by his statements and testimony, which the ALJ found not fully supported, as discussed above. *See* Tr. 34 (noting that, contrary to Plaintiff's reports, Dr. Parikh "repeatedly notes that the migraines are well controlled" and "[w]hile the evidence is clear that the claimant suffers from migraine headaches, the objective evidence fails to support the claimant['s] allegation that they are as severe and/or frequent as [he] maintains."). As discussed above, this subjective symptom report finding is supported by substantial evidence. Thus, the undersigned finds the ALJ did not err in failing to include additional limitations based on Plaintiff's self-reports. *See Casey v. Sec'y of Health &*

*Human Servs.*, 987 F.2cd 1230, 1235 (6th Cir. 1993) (ALJ only required to incorporate the limitations he finds credible); Tr. 34 ("Any further restrictions in the claimant's functional capacity would simply be based on the claimant's subjective complaints and, as discussed above, the claimant's statements in this regard are not supported by medical evidence.").

Further, the ALJ noted his RFC assessment was "supported by the medical evidence . . . and the opinions of Drs. Zeck, Spindler, Assaf, Rudy, and Voyten." (Tr. 34). An ALJ may properly reject allegations of disabling pain based on inconsistency with medical opinions of record. *See Schooley v. Comm'r of Soc. Sec.*, 2015 WL 4925189, at *6 (N.D. Ohio) ("Furthermore, the medical opinions of four consultative examiners and all of the state agency reviewers concluded Plaintiff was capable of working and noted no particular limitations in relation to migraines or the negative effects the symptoms could have on Plaintiff's ability to work."). While here those examiners and reviewing physicians imposed a variety of restrictions, none of them imposed additional restrictions due to Plaintiff's migraines. *See* Tr. 364-72, 421-26, 429-33, 362, 422, 381-83, 463-70. This supports the ALJ's decision not to include any further limitations in the RFC.

Plaintiff also contends the ALJ "cherry-picked" selective portions of the records, rather than considering the record as a whole. (Doc. 12, at 11). In support, Plaintiff cites three emergency room visits for migraine complaints "between July 2013 and September 2014". *Id.* (citing Tr. 258-83, 293-95, 304-06, 442-44). Plaintiff's childhood disability benefits ceased on June 30, 2014. As the Commissioner correctly points out, only one of these emergency room visits falls within the relevant time period. *See* Tr. 442-45 (September 2014 emergency room visit). Although the ALJ did not specifically mention this visit, an ALJ may consider all the evidence without discussing all the evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). And, a single emergency room visit (during which Plaintiff was treated with medication and released

24

several hours later) in the context of Dr. Parikh's continued documentation that Plaintiff was doing well on his migraine medications, does not undermine the substantial evidence supporting the ALJ's RFC.

This Court and others have found, in the context of migraines, an ALJ's RFC supported where the ALJ considers, *e.g.*, daily activities, a lack of supporting objective evidence, and a lack of supporting medical opinion evidence. *See Schooley*, 2015 WL 4925189, at *6 (finding no error in ALJ's failure to include migraine-related restrictions where ALJ considered objective evidence, treatment records, inconsistent activities of daily living, and medical opinions); *Frankowski*, 2012 WL 6153399, at *7 (finding no error in failure to include migraine-related restrictions where Plaintiff pointed to treatment records, and his testimony, but no objective medical evidence of migraines), *report and recommendation adopted by* 2012 WL 6152998. The undersigned similarly finds no error in the ALJ's RFC analysis related to Plaintiff's migraines here.

*Concentration, Persistence, or Pace and Work Pressure Limitations*

Plaintiff next contends the ALJ erred in failing to incorporate in the RFC limitations on concentration, persistence, and pace. Plaintiff argues the ALJ credited opinions containing such restrictions, but omitted such restrictions from the RFC determination.

An ALJ is not required to adopt all limitations in a particular opinion, even one to which he assigns "great" or "significant" weight. *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). The final responsibility for determining a claimant's RFC "rests with the ALJ, not a physician." *Poe*, 342 F. App'x at 157 (citing 20 C.F.R. § 416.946(c)); *see also* SSR 96–5p, 1996 WL 374183, *4 ("Even though the

adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing.").

Plaintiff points out the ALJ gave significant weight to the opinions of Drs. Zeck and Spindler, and great weight to reviewing physicians Drs. Rudy and Voyten.[5] Dr. Zeck opined that "[b]ased upon some of the school reports [Plaintiff] is able to maintain attention although it is a problem for him at times" (Tr. 370) and he "would have difficulty dealing with work pressure in the work setting" (Tr. 372). Dr. Spindler opined Plaintiff "did not have any major difficulty staying focused" and that "[o]nce he learns a new skill or work routine he may come close to the performance speed of others, though at his peak performance he is likely to trail somewhat behind others." (Tr. 426). Thus, Dr. Zeck opined Plaintiff might have some difficulty with maintaining attention (Tr. 370), and Dr. Spindler opined Plaintiff might have some restrictions in pace (Tr 426). Dr. Voyten noted Plaintiff would have moderate limitation in the ability to maintain attention and concentration for extended periods, but more specifically explained: he "retain[ed] sufficient mental capacity to concentrate, understand, and remember routine, repetitive and 3-4 step uncomplicated instructions with adequate persistence and pace once he learns new materials or skills." (Tr. 470).

Again, the ALJ is not required to adopt the entirety of a medical opinion, even one to which he assigns significant weight. *See, e.g., Reeves*, 618 F. App'x at 275. And, the ALJ here limited Plaintiff to "simple tasks with simple instructions." (Tr. 29). This is supported by Dr. Voyten's opinion. Although Plaintiff cites case law for the proposition that a limitation to "simple" tasks may not sufficiently account for "moderate" limitations in concentration, persistence, and pace,

---

5. The ALJ noted that "As Dr. Voyten's opinion is based on a more complete review of the file and the additional reports she cites, the undersigned gives greater weight to her reports when these reports have disparate findings." (Tr. 33).

Dr. Voyten's opinion was more specific than just "moderate". Rather, she said he could handle "3-4 step uncomplicated instructions with adequate persistence and pace once he learns new materials or skills." (Tr. 470). Although Plaintiff interprets this as an opinion which "require[s] restrictions on pace" (Doc. 12, at 18), the undersigned finds ALJ's RFC is reasonably consistent with Dr. Voyten's opinion that Plaintiff would have "adequate persistence and pace" (Tr. 470). *Id.*

Further, Plaintiff contends the RFC fails to account for restrictions on "work pressures". But again, the ALJ limited Plaintiff to "simple tasks with simple instructions" and also incorporated a limitation to "[o]nly occasional interaction with supervisors." (Tr. 29). The undersigned finds this reasonably consistent with Dr. Voyten's opinion that Plaintiff could "handle the stresses of a routine, repetitive, or 3-4 step tasks." (Tr. 470). And, the RFC in this regard is supported by substantial evidence cited by the ALJ, and elsewhere in the record, such as Plaintiff's ability to maintain part-time employment and attend college. *See* Tr. 34.

The undersigned therefore finds no error in the ALJ's RFC assessment. This is so even though Plaintiff can point to contrary evidence in the record. *Jones*, 336 F.3d at 477 (court must affirm even if substantial evidence supports a claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ").

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI supported by substantial evidence and recommends the decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).